**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **TORIYAHNA GRANT,** | |
| **Plaintiff,** | **CASE NO.:** |
| **vs.** | |
| **MUSEUM OF ARTS AND SCIENCES, INC. a Domestic Nonprofit Corporation** | |
| **Defendant.** | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff TORIYAHNA GRANT ("Plaintiff"), by and through her undersigned counsel brings this action against Defendant MUSEUM OF ARTS AND SCIENCES, INC. ("Defendant"), and states as follows:

## INTRODUCTION

This is an action for damages and all available relief based on race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq*. ("Section 1981"), as well as discrimination and retaliation under the Americans with Disabilities Act of 1990, as amended ("ADAAA"), 42 U.S.C. § 12101 *et seq*. Due to Defendant's violation of Plaintiff's rights to be free from racial and disability discrimination as well as retaliation, Plaintiff seeks to

recover front pay, back pay, reinstatement, lost benefits, compensatory damages, emotional distress damages, pain and suffering, injunctive relief, reasonable attorneys' fees and costs, and any other relief to which Plaintiff is entitled, including but not limited to, equitable relief.

## JURISDICTION AND VENUE

1. Plaintiff invokes the jurisdiction of this court pursuant to 42 U.S.C. § 12101 *et seq*., 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12117, and 42 U.S.C. § 2000e-5(f).

2. This Court has jurisdiction over Plaintiffs' claims because at all times material to this Complaint, Plaintiff worked for Defendants in Fairburn, Macon County, Georgia.

3. The illegal conduct occurred within the judicial district in and for this District.

4. This Court is an appropriate venue for all Plaintiff's claims under 28 U.S.C. § 1391(b) and 42 U.S.C. § 1981 because Plaintiff resides within the Northern District of Georgia, all or a substantial majority of the events giving rise to Plaintiff's claims occurred in this judicial district, and Defendant is registered to conduct business in the State of Georgia and regularly conducts business within this District.

## PARTIES

5. Plaintiff is an adult individual who resides in Macon, Bibb County, Georgia.

6. At all times material hereto, Plaintiff worked for Defendant in Macon, Bibb County, Georgia.

7. Plaintiff is a citizen of the United States of America and a resident of the State of Georgia and at all such times, Plaintiff was an "employee" of Defendant as defined under the ADAAA at 42 U.S.C. § 12111(4).

8. Plaintiff, at all times relevant hereto, was an individual with a disability as the term is defined under 42 U.S.C. § 12102(1).

9. Plaintiff is a person with a disability as she has an impairment causing substantial limitations in one or more major life activities, she has a record of disability, and because Defendant regarded her as having an impairment.

10. Defendant MUSEUM OF ARTS AND SCIENCES, INC. is a Domestic Nonprofit Corporation registered to do business in the state of Georgia.

11. Defendant may be served by delivering a copy of the Summons and Complaint upon its registered agent, Corrie Hall, at 544 Mulberry St., Suite 1000, Macon, GA, 31201.

12. During all times relevant hereto, Defendant has employed the requisite number of employees under the ADAAA, therefore, Defendant is covered under the ADAAA in accordance with 42 U.S.C. § 12111(5).

13. During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under Title VII and has continuously been an employer engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(b). Defendant is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b)

14. During all times relevant hereto, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District and is within the jurisdiction of this Court and this District.

## STATUTORY PREREQUISITES

15. Plaintiff is an African American female individual who suffered discrimination based on her race, color and disability.

16. Accordingly, Plaintiff is a member of a class of individuals protected by Title VII and the ADAAA.

17. Plaintiff was qualified for her position.

18. The Defendant meets the statutory criteria for coverage as an "employer" under Title VII.

19. Plaintiff meets the statutory criteria for coverage as an "employee" under Title VII.

20. The Defendant meets the statutory criteria for coverage as an "employer" under the ADAAA.

21. Plaintiff meets the statutory criteria for coverage as an "employee" under the ADAAA.

22. Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), on October 21, 2025.

23. On July 16, 2026, the EEOC issued its right-to-sue letter.

24. Therefore, this Complaint is filed within 90 days of Plaintiff receiving her right-to-sue letter.

25. Plaintiff has satisfied all administrative prerequisites to perfect her claim.

## FACTUAL ALLEGATIONS

26. Plaintiff, an African American female, was hired by Defendant on February 13, 2025, as the Office Manager.

27. From approximately February 13, 2025, through May 4, 2025, Plaintiff was working for Defendant through the staffing agency, Robert Half.

28. However, on May 5, 2025, Plaintiff was officially hired by Defendant as an employment of the Company.

29. Plaintiff had no performance or disciplinary issues during her tenure.

30. From the outset of her employment, Defendant treated Plaintiff differently on account of her race.

31. Although Plaintiff served as Office Manager, she was not issued a key to Defendant's facility until Defendant became her sole employer in May 2025.

32. Before then, Plaintiff routinely stood outside the facility trying to get the attention of her Caucasian co-workers, who could see her but ignored her, forcing her to call her supervisor, Executive Director Mark Walhimer, or rely on the custodian, William Green (African-American male), to let her in.

33. Walhimer and Green were the only Company workers who spoke with Plaintiff on a regular basis.

34. On March 2025, Plaintiff overheard Company Facility Manager Dale Lanier speaking to William Green in a derogatory fashion.

35. When Plaintiff intervened, Lanier asked her, "who died and made you God and the boss of me?" Plaintiff explained that she was the new Office Manager and thus his supervisor.

36. Shortly thereafter, Plaintiff overheard Lanier reporting the incident to Director of Finance Sandy Heath, complaining that Defendant failed to inform him that a "black girl" was now his boss.

37. When Lanier and Heath realized Plaintiff had overheard, they went silent.

38. Plaintiff reported the discriminatory comments to Walhimer.

39. Despite Plaintiff's report, Lanier routinely disregarded her instructions and assignments thereafter.

40. Also in March 2025, Plaintiff overheard Executive Director Susan Welch ask Heath, "who is that black girl [Plaintiff] and why is she here in the administrative area?"

41. When Heath explained that Walhimer had hired Plaintiff as the Office Manager, Welch exclaimed, "The office manager? A black girl?!"

42. Plaintiff walked into view to make clear she had heard the exchange, and both Welch and Heath fell silent.

43. Plaintiff reported these incidents to Walhimer, who apologized, acknowledged entrenched resistance to diversity within Defendant, and instructed Plaintiff to document any further incidents.

44. Early in her employment, Plaintiff informed her immediate supervisor, Walhimer, that she was previously diagnosed with anxiety and depression and was taking prescribed medication for same.

45. Plaintiff's anxiety and depression constitute qualifying disabilities under the ADAAA.

46. When Green, an African-American contractor, was accused of making inappropriate comments, Museum Manager Kristie Ussery unilaterally called the staffing vendor from home to end Green's assignment without first taking Green's statement.

47. Upon Green's return to the facility, Ussery and Lanier broke the lock to Green's storage area and removed his belongings.

48. By contrast, when a Caucasian male employee identified as "Adam" was accused of inappropriate touching and comments, Defendant followed its internal process and imposed only a 10-day suspension with pay.

49. On June 6, 2025, Plaintiff learned that Defendant had dismissed Green.

50. Based on the circumstances, Plaintiff believed Green had been treated differently on account of his race and complained to Walhimer about the disparate treatment.

51. That same day, Ussery confronted Plaintiff in a hostile manner regarding the Green incident and regarding Ussery's own violations of Company policy concerning confidential employee information. Plaintiff reported the confrontation to Walhimer.

52. Later on June 6, 2025, Plaintiff submitted an inquiry to the EEOC regarding the racial discrimination she was experiencing, and shortly thereafter she informed Walhimer of the EEOC inquiry.

53. An attorney for Defendant thereafter contacted Plaintiff and scheduled a meeting for June 9, 2025.

54. When Plaintiff arrived at the facility that day, Walhimer escorted her in through the back "to avoid Kristie [Ussery]," which Plaintiff found demeaning and insulting.

55. During the June 9, 2025, meeting, Plaintiff discussed her EEOC inquiry with Defendant's attorney.

56. After the meeting, Walhimer met privately with Plaintiff and offered her three (3) months of paid leave while Defendant investigated her complaints of racial discrimination.

57. Plaintiff verbally accepted the offer and did not report to work on the following two days, believing she was on paid leave.

58. On June 10, 2025, Plaintiff further complained of the racial discrimination described above via email to the Defendant's attorney.

59. On June 11, 2025, the Defendant's attorney contacted Plaintiff and asked whether she wished to continue working for Defendant.

60. Plaintiff responded that she did, but that she wanted Defendant to address the threatening, harassing, hostile, and discriminatory conduct first.

61. When Plaintiff referenced Walhimer's paid leave offer, the Defendant's attorney stated that Walhimer's offer was "incorrect" and that Defendant was instead

offering a severance package conditioned on a confidentiality clause that would prevent Plaintiff from filing a Charge of Discrimination with the EEOC.

62. Plaintiff requested the severance documentation and advised she would continue with the EEOC process.

63. At that point, Plaintiff realized that Walhimer's paid-leave offer had been illusory and designed to manufacture cause for termination.

64. Plaintiff had already missed two consecutive days of work in reliance on the offer, and one additional consecutive absence would have permitted Defendant to terminate her under Defendant's company policy. Plaintiff returned to work the following day.

65. On June 30, 2025, Walhimer completed the incident report pertaining to the June 6, 2025, confrontation between Plaintiff and Ussery.

66. Both Plaintiff and Ussery were issued written warnings, notwithstanding that Plaintiff had done nothing wrong.

67. The write-up constituted retaliation against Plaintiff for her complaints of racial discrimination.

68. Contrary to Defendant's later assertions, no investigator ever spoke to Plaintiff before discipline was issued, and Defendant's initial fact-gathering was limited to management witnesses.

69. Plaintiff did not refuse to work with Ussery categorically; rather, after being physically intimidated by Ussery, she limited her interactions with Ussery to email to preserve a paper trail and protect her personal safety.

70. On July 9, 2025, Plaintiff contacted Defendant's third-party Human Resources provider, PayDay, to inquire about Defendant's Employee Assistance Program.

71. Plaintiff advised PayDay that she was suffering from anxiety and depression caused by the racial discrimination she had been experiencing at Defendant.

72. The following morning, on July 10, 2025, PayDay inquired further into the matter and, upon information and belief, contacted Defendant about Plaintiff's disclosure.

73. Later that same day, Defendant terminated Plaintiff's employment.

74. Plaintiff was terminated only days after that purported decision date and shortly after she sought assistance for escalating anxiety through HR and declined to sign an NDA-tied severance proposal.

75. Plaintiff believes the Defendant's reason for her termination is false and a pretext for discrimination and retaliation under Title VII and Section 1981.

## CAUSES OF ACTION

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

76. Plaintiff realleges and adopts all allegations contained within paragraphs 1 through 75, as though fully stated herein.

77. Plaintiff is an African American female and a member of a protected class under Title VII.

78. Plaintiff was qualified for her position as an Office Manager and was performing her job satisfactorily throughout her employment.

79. Defendant discriminated against Plaintiff based on her race.

80. Defendant engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff as set forth above.

81. Plaintiff ultimately suffered the adverse employment action of termination based on her race.

82. Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

83. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law.

84. Defendant has willfully and wantonly disregarded Plaintiff's rights, and their discrimination against Plaintiff was undertaken in bad faith.

85. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income,

loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life. Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

86. Plaintiff realleges and adopts allegations contained in paragraphs 1 through 75, as though fully stated herein.

87. Defendant retaliated against Plaintiff because of her complaints about race discrimination.

88. Plaintiff engaged in statutorily protected activity by making numerous verbal and written complaints to Defendant regarding race discrimination.

89. Plaintiff suffered an adverse employment action after reporting to Defendant the unlawful conduct, when she was subjected to unfounded discipline and ultimately terminated.

90. A causal connection exists between the protected activity and the adverse action.

91. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against retaliation under Title VII because it treated Plaintiff less favorably because of her complaints of race discrimination.

92. Defendant does not have a legitimate, non-retaliatory reason for its firing of Plaintiff.

93. The conduct of Defendant and its agents and employees, proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

94. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of the Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter Defendant, and others, from such conduct in the future.

95. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses.

96. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

## COUNT III
## DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

97. Plaintiff realleges and adopts allegations contained in paragraphs 1 through 75, as though fully stated herein.

98. Plaintiff is an African American female individual and therefore a member of the protected class and/or is non-white as set forth in and pursuant to 42 U.S.C. § 1981.

99. At all times material, Plaintiff was an employee of the Defendant.

100. At all times material, Defendant through its agents, representatives and employees, who were acting in the course and scope of their employment, was/is an employer within the meaning of Section 1981.

101. Defendant deprived Plaintiff of her civil rights under 42 U.S.C. § 1981 by discriminating against Plaintiff with respect to the benefits, rights, privileges, terms and conditions of her employment by discriminating against Plaintiff with the specific purpose of humiliating, embarrassing, ostracizing and causing Plaintiff further harm and with the purpose of adversely affecting Plaintiff's ability to gain future and further employment.

102. Defendant has never, on any other occasion, acted in such a manner with Caucasian former or current employees who have entered into such or similar employment related contract(s), agreements or relationships with the Defendant.

103. Pursuant to 42 U.S.C. §1981(a), "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by

white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

104. Pursuant to 42 U.S.C. §1981 (b), "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

105. Based on the foregoing allegations as set forth in paragraphs 1-74, the Defendant violated Plaintiff's civil rights under 42 U.S.C. §1981 by discriminating against Plaintiff in the making and enforcement of her employment contract and employment relationship, including the performance, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship between Plaintiff and the Defendant.

## COUNT IV
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

106. Plaintiff realleges and adopts allegations contained in paragraphs 1 through 75, as though fully stated herein.

107. Plaintiff is an African American female individual and therefore a member of the protected class and/or is non-white as set forth in and pursuant to 42 U.S.C. § 1981.

108. At all times material, Plaintiff was an employee of the Defendant.

109. At all times material, Defendant through its agents, representatives and employees, who were acting in the course and scope of their employment, was/is an employer within the meaning of Section 1981.

110. Defendant deprived Plaintiff of her civil rights under 42 U.S.C. § 1981 by discriminating and retaliating against Plaintiff with respect to the benefits, rights, privileges, terms and conditions of her employment by discriminating and retaliating against Plaintiff with the specific purpose of humiliating, embarrassing, ostracizing and causing Plaintiff further harm and with the purpose of adversely affecting Plaintiff's ability to gain future and further employment.

111. Defendant has never on any other occasions acted in such a manner with Caucasian former or current employees who have entered into such or similar employment-related contract(s), agreements or relationships with the Defendant.

112. To this end, Plaintiff engaged in protected activity by complaining of disparate treatment.

113. Plaintiff suffered an adverse action.

114. Pursuant to 42 U.S.C. §1981(a), "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by

white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

115. Pursuant to 42 U.S.C. §1981 (b), "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

116. Based on the foregoing allegations as set forth in paragraphs 1-74, Defendant violated Plaintiff's civil rights under 42 U.S.C. §1981 by discriminating and retaliating against Plaintiff in the making and enforcement of her employment contract and employment relationship, including the performance, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship between Plaintiff and the Defendant.

## COUNT V
## DISCRIMINATION IN VIOLATION OF THE ADAAA

117. Plaintiff realleges and adopts allegations contained in paragraphs 1 through 75, as though fully stated herein.

118. Plaintiff suffers from a disabling medical condition pursuant to the ADAAA.

119. Plaintiff was discriminated against by the Defendant due to her disability in violation of federal law.

120. Plaintiff is protected by the ADAAA:

a) Plaintiff is a disabled employee who suffered discrimination because of her disability by Defendant; and

b) Plaintiff suffered an adverse employment action as a result of her disability.

121. Defendant was at all material times "employers" as envisioned and defined by the ADAAA.

122. Plaintiff's medical condition is a protected disability under the ADAAA, as amended. *See* 42 U.S.C. § 12102.

123. Defendant's actions unquestionably constitute disability discrimination in violation of the ADAAA, as amended.

124. By reason of the foregoing, Defendant's actions, and non-actions, affected the "terms, conditions or privileges" of Plaintiff's employment as envisioned by the ADAAA.

125. Plaintiff was a disabled individual during her employment, and therefore, she is a member of a protected class as envisioned by the ADAAA.

126. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the ADAAA.

127. The discrimination to which Plaintiff was subjected was based on her disability.

128. The conduct of Defendant, its agents, and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

129. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant to deter it, and others, from such conduct in the future.

130. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the ADAAA.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a) Back pay and benefits;

b) Interest on back pay and benefits;

c) Front pay and benefits;

d) Compensatory damages for emotional pain and suffering

e) Injunctive relief;

f) Prejudgment interest; and,

g) Non-pecuniary damages afforded under Section 1981;

h) Costs and attorneys' fees; and

i) Such other relief as the Court may deem just and proper.

Dated this 22nd day of September, 2026.

Respectfully submitted,

***/s/Alexandra R. Carmon***
Alexandra R. Carmon, Esq.
GA Bar No. 326215
Anthony J. Hall, Esq.
GA Bar No. 318028
THE LEACH FIRM, P.A.
1560 N. Orange Ave., Suite 600
Winter Park, FL 32789
Telephone: (407) 574-4999
Facsimile: (833) 423-5864
Email: acarmon@theleachfirm.com
Email: ahall@theleachfirm.com
Email: yhernandez@theleachfirm.com
***Attorneys for Plaintiff***

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Demand is hereby made for trial by jury on all issues raised by these pleadings.

***/s/Alexandra R. Carmon***
Alexandra R. Carmon, Esq.